VERNON C. GOINS II (CA SBN 195461)
vgoins@goinslawfirm.com
GOINS LAW FIRM, PC
1970 Broadway, Suite 450
Oakland, CA 94612
Telephone: (510) 663-3700
Facsimile: (510) 663-3710

Attorneys for Plaintiff
LISA CRAIG

**GOINS LAW FIRM, PC**
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA CRAIG, an individual, | ) No. |
| | ) |
| Plaintiff, | ) **PLAINTIFF LISA CRAIG'S COMPLAINT** |
| | ) **FOR:** |
| vs. | ) |
| | ) (1) RETALIATION IN VIOLATION OF |
| TRAVIS CREDIT UNION, a California | ) TITLE VII (42 U.S.C. §2000e-3(a)) |
| Nonprofit Corporation, and DOES 1-30, | ) |
| inclusive, | ) (2) WRONGFUL TERMINATION IN |
| | ) VIOLATION OF TITLE VII; and |
| Defendants. | ) |
| | ) (3) DISCRIMINATION ON THE BASIS OF |
| | ) RACE IN VIOLATION OF TITLE VII |
| | ) (42 U.S.C. §2000e-2(a)) |
| | ) |
| | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**GOINS LAW FIRM, PC**
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

## I.    INTRODUCTION

1.    Plaintiff LISA CRAIG brings the instant civil action before this honorable Court seeking equitable, monetary, and such other relief as will redress past deprivation, discrimination, and other causes of action / claims for relief against Defendant TRAVIS CREDIT UNION, and DOES 1 through 30, inclusive (collectively, the "Defendants").

## II.    THE PARTIES

2.    Plaintiff LISA CRAIG ("Plaintiff") is a 58-year-old African American female and a resident of Hercules, California, County of Contra Costa. At all times mentioned herein, Plaintiff was employed by Defendant to work at Defendant's headquarters in Vacaville, CA as the Vice President of Real Estate.

3.    Defendant TRAVIS CREDIT UNION ("TCU") is a California Nonprofit Corporation with its headquarters located at 1 Travis Way, Vacaville, CA. TCU is a local credit union with 23 branches in 12 different California counties, including but not limited to: Contra Costa, Merced, Napa, Solano, and Yolo counties.

4.    Defendant TCU an employer subject to suit under Title VII in that TCU is engaged in an industry affecting commerce who has 15 or more employees for each working day of 20 or more calendar weeks in the year of, or preceding, the filing of this Complaint.

5.    The true names and capacities of Defendants identified as DOES 1 through 30 are currently unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will endeavor to amend this Complaint to insert their true names and capacities when the same are ascertained.

## III.    JURISDICTION AND VENUE

6.    Jurisdiction of the subject matter of this action is established in this court under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 United States Code Section 2000e-5(f)(3). This is the proper venue for this action under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 United States Code Section 2000e-5(f)(3), in that all injuries complained of herein were caused and suffered in Solano County, California, which is within the Eastern District as more fully set forth herein.

7. Defendants are properly before this Court because "a substantial part of the events upon which this action is based occurred in this district" pursuant to 28 U.S.C. § 1891(a)(2) and § 1343 since the discrimination and termination complained of herein occurred in Vacaville, Solano County, California.

## IV.    DIVISIONAL ASSIGNMENT

8. Basis for assignment to the Eastern Division of the Court sitting in Sacramento, California pursuant to Civil Local Rule 120(d) exists in that a substantial part of the events or omissions giving rise to Plaintiff's causes of action and claims for relief took place in Vacaville, Solano County, California.

## V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. The EEOC issued Plaintiff a Right to Sue notice on March 29, 2024. A true and correct copy of Plaintiff's Right to Sue is attached hereto as "**Exhibit A**" and is incorporated herein by this reference.

## VI.    FACTUAL ALLEGATIONS

10. This is an action brought pursuant to Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 United States Code Section 2000e et seq., to obtain relief for Plaintiff for alleged discrimination in employment against Plaintiff because of Plaintiff's race. Plaintiff alleges that he or she has been wrongfully terminated on account of her race, in violation of Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 United States Code Section 2000e-2(a)(1) and (2).

Plaintiff's Employment with TCU

11. Plaintiff was hired to work as TCU's Vice President of Real Estate on or around July 26, 2021 at TCU's headquarters located at 1 Travis Way Vacaville, CA. Prior to her employment at TCU, Plaintiff worked at Wells Fargo and was the #1 lending manager in the nation.

12. As the VP of Real Estate for TCU, Plaintiff was responsible for the strategic priorities and division initiatives to deliver real estate products, channels, and infrastructure required to ensure success, loan growth, profitability, and increase of operational efficiency.

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

13.      Upon her initial arrival to TCU, Plaintiff managed a team of sixty-one (61) employees, in addition to an Assistant Vice President ("AVP"). It is typical practice to allow the Vice President to choose their own AVP; however, an AVP had been chosen by TCU prior to Plaintiff's employment. The chosen AVP had four (4) direct managers reporting to him. After reviewing the chosen AVP's resume, Plaintiff grew concerned regarding his ability to perform the necessary functions of the job. It became apparent that the AVP had no prior experience or background for his role. Plaintiff communicated her concerns to her supervisor, who agreed that the AVP lacked experience. However, no action was taken to supervise the AVP and/or his performance.

Plaintiff's Discovery of Issues at TCU

14.      Since the beginning of her employment with TCU, Plaintiff worked to improve the control and systems at TCU. For example, shortly after being hired, Plaintiff discovered that there were no performance or accountability metrics in place and accordingly worked with the necessary departments to do so. Similarly, Plaintiff discovered that there were no accountability metrics, noticed various violations of the Home Mortgage Disclosure Act ("HMDA") and immediately began working to correcting the violations.

15.      Similarly, Plaintiff discovered that the mortgage underwriting software had been manipulated by the AVP. Specifically, Plaintiff discovered that the AVP had turned off the necessary controls in the mortgage lending software (LFC), which allowed underwriters to approve loans without going through the formal process and without obtaining the necessary authorization. As a  result, there were a number of loans that were improperly granted. Upon being confronted by Plaintiff, the AVP that he had turned off the controls to "close loans faster." This occurred prior to Plaintiff's employment with TCU.

16.      Plaintiff and Nathan Cox, TCU's Senior Vice President & Chief Lending Officer learned about another compliance problem during Blanca Lomeli's exit interview after she had tendered her resignation in August 2021. Specifically,  that there were two loans that were reassigned before the loans closed, not afterward as had been alleged. Mr. Cox informed Mr. Barry Nelson, CEO, Nav Khanna, COO, and Teresa Shafer, CHRO. As a result, Human

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

Resources subsequently established a corrective action program. This shows that the top-ranking TCU executives were made aware of the issues and collaborated with my client in resolving the problem that much earlier on. Indeed, when Mr. Rickey Bradley's role concerning irregularities was discovered, he was placed on correction action. Had Plaintiff and/or Mr. Cox had not been made truly aware of what had actually happened regarding the loan reassignment, TCU would have incorrectly attributed the problem to my clients. It was not until Plaintiff subsequently dived into the issue further did it become obvious that a commission steering scheme was in play which Plaintiff reported to management.

17.     Plaintiff also discovered that there were practices that were inconsistent with industry standards. For example, some of the internal processes were flawed related to commercial lending, consumer lending and real estate. In addition to inappropriate levels of controls, Plaintiff was not allowed to hire additional staff to address the problems that she discovered and brought to her manager's attention. Plaintiff raised her concerns about inadequate controls when she made a compliance presentation to senior TCU leaders sometime in early 2022. Thus, TCU knowingly tolerated a work culture that did not have sufficient controls, internal rigor and failed to devote the necessary resources to fix the problems before my clients were hired and after their arrival.

18.     TCU hired a new CEO some time in or around April 2022. Shortly thereafter, Plaintiff informed the new CEO about the issues that she had discovered with mortgages and was informed by the CEO that TCU would get a new operating system. However, this was put on the backburner. Plaintiff was not aware of the magnitude of issues with mortgages and loans when she discussed her concerns with the CEO.

19.     Sometime in or around June 2022, the AVP brought a loan for Plaintiff's review. The loan immediately stood out to Plaintiff as being something highly problematic for a number of reasons, including but not limited to the fact that the loan was improperly approved. Moreover, this caused Plaintiff to become concerned that the AVP and other employees were taking advantage of mortgage sales and loan originations, which are incredibly profitable for

those involved since by turning off all controls, each employee involved in the loan (underwriting, loan officer, operations manager, loan originator, etc.) received a higher payout.

Investigations & Audits Re: Commission Schemes

20.     During the first week of July 2022, Plaintiff reviewed ninety (90) days worth of loans that were approved by TCU's staff. Plaintiff's review revealed the presence of improper commission steering in a significant number of loans that had been improperly approved by TCU's staff.  Plaintiff then presented the information the information she received from the AVP and from her review.

21.     In or around July 2022, TCU conducted an internal audit with Credit Union National Association which revealed that there was 600,000 in loans sold. Plaintiff believed this occurred because of how freely employees were able to manipulate the system controls. Plaintiff was subsequently forced to terminate every employee that was found to have been involved in manipulating system controls.

22.     Plaintiff informed Mr. Cox of her belief that there was a significant problem at TCU surrounding commission payouts. The same day, she immediately alerted Human Resources as directed by Mr. Cox. Based upon their research, Plaintiff and Mr. Cox discovered who they believed was the primary misfeasor that was responsible for creating and benefitting from the fraudulent commission scheme. Plaintiff and Mr. Cox initially estimated that there were approximately $300,000 in commissions that had been inappropriately disbursed or poised to be disbursed. Plaintiff prevented $110,000 in purported sales commissions from being inappropriately paid to Mr. Rickey Bradley and Mr. Johal in June 2022.

23.     TCU did not take any action against the employee who orchestrated the fraudulent commission scheme. Rather, TCU allowed the employee to resign from his employment with the approval of its Legal Department. Moreover, TCU permitted the known misfeasor to escape this commission steering ordeal with impunity. No legal action was taken to disgorge the unearned commissions from the misfeasor or to have his real estate license revoked by the State authorities. Plaintiff was advised by Defendants that this was 'TCU's way of dealing with the matter.'

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

24.      On or around August 1, 2022, TCU initiated an internal audit and investigation to look into purported commission steering and professional malfeasance by lower-level employees. TCU hired external resources, including a forensic auditor, to conduct both the investigation and audit to explore allegations of commission steering. Plaintiff was interviewed and interrogated as a part of the investigation on two (2) separate occasions, wherein Plaintiff reiterated that she did not have any involvement in the fraudulent commission scheme. **Plaintiff was nevertheless placed on administrative leave, along with Nathan Cox, TCU's Senior Vice President & Chief Lending Officer.**

25.      Plaintiff and Mr. Cox adamantly denied any involvement in the purported wrongdoing(s) pertaining to commissions. Plaintiff and Mr. Cox further maintained that they did not direct, participate or benefit from any commission steering scheme. Moreover, neither Mr. Cox nor Plaintiff ever received inappropriate commissions. Similarly, Mr. Cox and Plaintiff had no knowledge of the policy breaches by individuals who were under their supervision until they discovered irregularities in June 2022 and immediately reported the problem. Given the lack of controls at TCU that predated their employment, Mr. Cox and Plaintiff should not have been held accountable for the malfeasance of other individuals before they were brought on board at TCU.

26.      On or around December 23, 2022, Plaintiff was terminated from her employment with TCU for allegedly failing to provide oversight to employees involved in manipulating system controls and commissions, despite Plaintiff's repeated attempts to regulate and resolve the issues.

27.      Plaintiff and Mr. Cox were told that they would be interviewed a second time during the TCU's external investigation. However, no such interview occurred. Although Plaintiff requested the final investigatory report, she was never provided the investigatory report before being hastily terminated without notice on the last business day before Christmas 2022. Similarly, Plaintiff was not given the reason for termination until a week later after it was demanded. However, the alleged bases for the termination was not specifically covered during the investigation. Accordingly, Plaintiff was not given the opportunity to respond to TCU's

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

concerns. The interviews were aborted before they were finished according to TCU's external investigator.

28.     Plaintiff and Mr. Cox are both persons of African-American descent and were the only individuals that were targeted in TCU's investigation, despite the numerous executives that were also in the chain of command and should have been investigated similarly.  For example, Mr. Sonny Yambao, Assistant Vice President, Real Estate, has been allowed to remain on active work status and with the same chain of command. Prior to Plaintiff's employment with TCU, Mr. Yambao had assumed the signing authority of Ms. Tanya Robinson, Vice President of Real Estate, after her untimely death in late February 202l. Although Plaintiff was hired to replace Ms. Robinson, TCU allowed Mr. Yambao to retain signing privileges and otherwise did not require Mr. Yambao to transfer signing authority to Plaintiff as his superior. Additionally, Mr. Yambao calculated commission payments based upon sales reports prepared by Mr. Ricky Bradley, Sales Manager. Following his review, Mr. Yambao's commission reports were forwarded to Plaintiff and Mr. Cox for review and approval. On multiple occasions, Plaintiff caught numerous errors and requested Mr. Yambao to recalculate the commission report.

29.     As part of his monthly due diligence, Mr. Cox would review the sales commission report and ask Plaintiff or Mr. Yambao questions before signing off on the report as the final step in the commission approval process. At Mr. Cox's level, he did not receive the detail for each transaction due to the limitations of TCU's reports and systems. As an example of his due diligence, at least on one occasion, Mr. Cox asked Plaintiff to validate Mr. Manny Johal's sales because his numbers appeared to be unusually high. This situation tipped off both Mr. Cox and Plaintiff to examine more closely Mr. Johal's purported sales that Mr. Bradley had reported to Mr. Yambao and ultimately, Plaintiff and Mr. Cox. It was explained to Plaintiff and Mr. Cox that Mr. Johal had many contacts in the Asian community that were fruitful.

30.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendant's agents, servants and/or employees as described herein, in doing the acts alleged herein, were acting within the course of their employment and with the permission,

PLAINTIFF LISA CRAIG'S COMPLAINT FOR (1) RETALIATION IN VIOLATION OF TITLE VII, (2), WRONGFUL TERMINATION IN VIOLATION OF TITLE VII; AND (3) DISCRIMINATION IN VIOLATION OF TITLE VII
*Craig v. Travis Credit Union, et al.*
USDC – EDCA Case No TBD
8

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

consent, and authority of Defendant; and all are responsible in some manner for the occurrences hereinafter alleged; and Plaintiff's injuries were proximately caused by the actions of each.

**FIRST CAUSE OF ACTION**
**Retaliation in Violation of Title VII Civil Rights Act**
**42 U.S.C. § 2000e et seq.**
**(Against All Defendants)**

31.    Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs, as though fully set forth at length herein.

32.    Title VII prohibits an employer from retaliating against an employee who has opposed a discriminatory practice. More specifically, 42 U.S.C. section 2000e-3 states, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

33.    Plaintiff engaged in protected activity by reporting other employees who had engaged in commission-steering and/or improperly manipulated system controls in an effort to approve loans that otherwise would not have been authorized and/or approved by Plaintiff.

34.    Management for Defendant TCU aware that Plaintiff fully participated in and cooperated with the audit and investigation. Management was also aware that that Plaintiff had repeatedly complained of the issues subject to the investigation.

35.    Plaintiff further suffered an adverse employment action, including but not limited to being placed on administrative leave on August 1, 2022, until Plaintiff's termination on December 23, 2022.

36.    Defendant's conduct, as alleged above, constituted an unlawful retaliation in employment on account of Plaintiff's reporting the improper, unlawful and unethical conduct of TCU's employees. Plaintiff was terminated, despite not being involved in any wrong-doing. Similarly, Plaintiff neither knowingly sanctioned or ratified the misconduct by lower-level employees because the suspected activities potentially violated not only company policy, but also industry best practices and financial laws and regulations.

**GOINS LAW FIRM, PC**
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

37.    Despite this, Plaintiff was scapegoated by TCU for doing what a good manager and executive should do by reporting suspected misconduct to senior management.

38.    Moreover, TCU's suspect lending practices were in place before Plaintiff was employed at TCU. In fact, Plaintiff had only been employed at TCU for less than a year when Plaintiff began to discover misconduct over time while performing her job. Plaintiff became worried and reported the conduct to senior management, who responded by taking Plaintiff out of the workplace and by terminating Plaintiff's employment.

39.    Plaintiff believes that TCU's senior management was content with having the ability to book loans without the proper controls and lending practices in place for its financial benefit. When Plaintiff failed to go along with the lax standards and reported the irregularities that were identified, Plaintiff was fired.

40.    In doing the acts herein alleged, Defendants and its agents acted fraudulently, willfully, maliciously, oppressively, and with callous disregard of Plaintiff's interests and subjected Plaintiff to unjust hardship, knowing that their conduct was substantially likely to vex, annoy, and injure Plaintiff. As a result of this conduct, Plaintiff is entitled to general damages against Defendant.

41.    As a proximate result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to: (1) loss of income and employment benefits, including, but not limited to salary, back pay, front pay; (2) emotional and physical distress, humiliation, and embarrassment; (3) other damages, all in an amount to be proven at trial.

42.    Plaintiff also seeks attorney's fees under this claim pursuant to 42 U.S.C. § 1988 and all other applicable statutes.

**SECOND CAUSE OF ACTION**
**Wrongful Termination in Violation of Title VII of the Civil Rights Act**
**42 U.S.C. § 2000e et seq.**
**(Against All Defendants)**

43.    Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs, as though fully set forth at length herein.

44.    Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs, as though fully set forth at length herein.

45.    Title VII prohibits an employer from discharging a person from employment because of race, gender, or age.

46.    On or about December 23, 2022, Defendant terminated Plaintiff without good cause because she was and is African American, a woman, over the age of 40, and in retaliation for her reporting improper commission-steering efforts of other employees. Prior to said date, Plaintiff was discriminated against in the terms, conditions, and privileges of her employment based on her race, gender, and age.

47.    As a direct, legal, and proximate result of Plaintiff's race, Defendant terminated Plaintiff's employment.

48.    As a proximate result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to: (1) loss of income and employment benefits, including, but not limited to salary, back pay, front pay; (2) emotional and physical distress, humiliation, and embarrassment; (3) other damages, all in an amount to be proven at trial.

49.    Plaintiff also seeks attorney's fees under this claim pursuant to 42 U.S.C. § 1988 and all other applicable statutes.

### THIRD CAUSE OF ACTION
**Discrimination on the Basis of Race in Violation of Title VII of the Civil Rights Act 42 U.S.C. § 2000e et seq.**
**(Against All Defendants)**

50. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs, as though fully set forth at length herein.

51.    Title VII prohibits an employer from discrimination against any individual on the basis of "race, color, religion, sex, or national origin."

52.    Plaintiff is a member of several protected classes. Plaintiff is a 58-year-old African America female. Plaintiff suffered adverse actions due to her race and color, including but not limited to harassment and wrongful termination.

53.    Plaintiff is an African American woman who was qualified for her position at TCU due to over 25 years of experience serving at Wells Fargo and other financial institutions in primarily leadership roles. Prior to launching the audit and investigation, Plaintiff had never

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

**GOINS LAW FIRM, PC**
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

received negative feedback or complaints regarding her work performance. Similarly, Plaintiff had never involved in any of the loans that improperly approved by other employees, nor received any of the improper commissions at the subject of the audit and investigation.

54.      TCU intentionally used Plaintiff and Mr. Cox as scapegoats for the commission-steering efforts of other employees.

55.      At the time of termination, Plaintiff was qualified for her position and was able to perform the necessary functions of her job.

56.      Similarly situated individuals outside of Plaintiff's protected classes were treated more favorably than Plaintiff. Rather, TCU took action against the two-African American employees who brought this matter before TCU's managing personnel, but otherwise failed to take any corrective action against other employees, including but not limited to Mr. Johal, Mr. Yambao, and Mr. Bradley.

57.      Colleagues of other races were treated more favorably compared to Plaintiff and Mr. Cox, both of whom are African-American with significantly more experience than their counterparts.

58.      Plaintiff had no reason to believe that she would be used as a scapegoat prior to being placed on administrative leave on August 1, 2022.

59.      TCU's act of placing Plaintiff on administrative leave constituted an adverse employment action because Plaintiff was removed from her position pending the investigation. Plaintiff's termination from employment also constituted an adverse employment action since Plaintiff was terminated for actions to which she had no involvement or knowledge.

60.      TCU's failure to take adverse action against any of the employees involved in commission-steering and/or turning off system controls was discriminatory seeing as the only two employees that TCU took action against are Plaintiff and Mr. Cox, who are the only two (2) African-American employees.

61.      The foregoing conduct by Plaintiff's supervisors was intentional and deliberate in violation of Title VII Civil Rights Act.

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

62.    All reasonable African American individuals would have found the aforementioned conduct to constitute a racially hostile work environment.

63.    In doing the acts herein alleged, Defendants and their agents acted fraudulently, willfully, maliciously, oppressively, and with callous disregard of Plaintiff's interests and subjected Plaintiff to unjust hardship, knowing that their conduct was substantially likely to vex, annoy, and injure Plaintiff. As a result of this conduct, Plaintiff is entitled to general damages against Defendant.

64.    As a proximate result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to: (1) loss of income and employment benefits, including, but not limited to salary, back pay, front pay; (2) emotional and physical distress, humiliation, and embarrassment; and (3) other damages – all in an amount to be proven at trial.

65.    As a further proximate result of Defendants' unlawful and intentional discriminatory action(s) against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered the intangible loss of such employment-related opportunities as Vice President of Real Estate. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

66.    As a further proximate result of Defendants' unlawful and intentional discriminatory action(s) against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

67.    The above-recited actions of Defendants were done with malice and/or with reckless indifference to plaintiff's rights under Title VII, in that Defendants targeted and terminated Plaintiff on the basis of her race and protected status. Defendants' conduct warrants the assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar misconduct.

68.    Plaintiff has no adequate remedy at law to secure relief for the loss of her employment and has been irreparably injured as a result of Defendants' disregard for protected

status. Plaintiff also seek attorney's fees under this claim pursuant to 42 U.S.C. § 1988 and all other applicable statutes.

69.     Plaintiff filed a charge of discrimination against Defendant TCU with the Equal Opportunity Commission (EEOC). That charge was timely filed, under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 United States Code Section 2000e-5(e), as follows: Plaintiff filed the charge with the EEOC within 300 days of the occurrence of the violation of Title VII herein alleged.

70.     On March 29, 2024, Plaintiff received notice from the EEOC of his/her right to bring this action, and plaintiff timely filed this action within 90 days after or the time period specified in that notice. (See Ex. A).

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable. (FRCP Rule 38.)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa Craig respectfully prays for the following relief:

1.     For entry of judgment in favor of Plaintiff and against Defendants, and each of them;

2.     For damages according to proof, including, but not limited to, back pay, a doubling of the loss of wages and benefits, and other lost employee benefits;

3.     For compensatory damages as allowed by law for losses resulting from humiliation, mental anguish, and emotional distress;

4.     For pre- and post-judgment interest on lost earnings, deferred compensation, and other employee benefits at the prevailing rates;

5.     For orders directing Defendants to 1) cease and desist from further acts of discrimination and retaliation and 2) implement and enforce further discrimination prevention protocols in the DHS workplace, including, but not limited to, preventive and remedial employee training;

GOINS LAW FIRM, PC
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

6.      For costs of suit incurred herein, including reasonable attorney's fees; and

7.      For such other and further relief as the Court may deem just and proper.

Dated: June 27, 2024                    GOINS LAW FIRM, PC


/s/ Vernon C. Goins II
VERNON C. GOINS II
Attorneys for Plaintiff
LISA CRAIG

**GOINS LAW FIRM, PC**
1970 Broadway, Suite 450, Oakland, California 94612
Tel. (510) 663-3700; Fax (510) 663-3710

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/29/2024

**To:** Lisa Craig
3114 North Front Street
Hercules, CA 94547

On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR 1601.7(a))

Charge No: 37A-2023-02343

EEOC Representative and email:   KARRIE MAEDA
State, Local & Tribal Program Manager
karrie.maeda@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge. The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Christine Park-Gonzalez
03/29/2024
Christine Park-Gonzalez
District Director